UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

DUANE COBLE,

                                Petitioner,

              -vs-

DAVID M. UNGER,

                                Respondent.
———————————————————————————

**No. 1:13-cv-00889-MAT**
**DECISION AND ORDER**

## I.   Introduction

Proceeding pro se, Duane Coble ("Coble" or "Petitioner") seeks
a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is
currently in Respondent's custody pursuant to a judgment entered
against him in County Court, Erie County (Amico, J.) of New York
State, following a bench trial, on one count Robbery in the Second
Degree (P.L. § 160.10(2)(b)).

## II.   Factual Background and Procedural History

Under Erie County Indictment No. 01278-2009, Petitioner,
Ronald McCoy ("McCoy"), and Rodney Harris ("Harris") were charged
with Robbery in the First Degree (P.L. §§ 160.15(2), 20.00) and
Burglary in the First Degree (P.L. §§ 140.30(1), 20.00). The
indictment also charged Petitioner and McCoy (but not Harris) with
Criminal Possession of a Weapon in the Second Degree (P.L.
§§ 265.03(3), 20.00). The charges stemmed from an alleged home
invasion on May 13, 2009, at the apartment of Frankie and Soloana
Knighton located at 73 St. Mary's Road in the City of Buffalo.

Petitioner and his co-defendants were convicted after a three-day bench trial before Judge Amico in Erie County Court. During the prosecutor's direct case, one of the victims, Frankie Knighton ("Mr. Knighton"), testified that as he was putting out the trash prior to leaving to attend a car auction in Syracuse, he observed three masked men walking up his driveway. McCoy had a bandana covering his face; Coble and Harris had stockings over their faces. (T.37-39, 41). Mr. Knighton testified that McCoy pointed a gun at his stomach, while Coble pointed a gun at his head. (T.40). They said, "[G]ive it up, give up everything, we know you got it." (T.35-42). They then forced him back inside the building.

Once inside the house, McCoy emptied Mr. Knighton's pockets of cash after demanding to know what he "had on him." Mr. Knighton informed them where all of the cash he had in the house was located, including the $1,000 he intended to bring to the car auction. According to Mr. Knighton, Coble went into the bedroom where his wife, Soloana Knighton ("Mrs. Knighton"), and their infant daughter, Samia, were lying in bed (T.43-44), while McCoy and the third assailant, Rodney Harris ("Harris"), stayed with him. They took out a sandwich bag and told Mr. Knighton, "[W]e going to fill this up." (T.45). Mr. Knighton insisted that there was no more money in the house. (T.92). Harris handed the money to McCoy, who placed it into a plastic bag. McCoy ordered Mr. Knighton to the floor at gunpoint while Harris attempted to tie him up with duct tape. Mr. Knighton testified that Harris spent "15 to 20 minutes"

in a "halfhearted" attempt to restrain him with duct tape, and succeeded only in getting duct tape on one of Mr. Knighton's wrists and around his forehead. (T.74, 97-98).

Mrs. Knighton testified that it was McCoy who was the first perpetrator to enter the room she was in with Samia. She testified that McCoy was wearing gloves, and pointed his handgun at her and demanded to know where the money was. At some point, Mrs. Knighton testified, Petitioner joined McCoy in the room with her and her daughter, and McCoy went back and forth between the two bedrooms. Mrs. Knighton testified that toward the end of the encounter, all three of the defendants "kind of rush[ed] up to the front" of the apartment and then "kind of ran off to the back," each into a different room. (T.128). Petitioner came into the room she was in, and tried to escape through the window but the bars blocked his exit. (T.128-29). Petitioner "kind of paused, looked at [her]" and then "started stripping off his layers of clothing. He took his mask off and he took his gloves off and he took his coat off and then he dropped the weapon by [her] daughter's bassinet." (T.128). This weapon, which had not been displayed previously, was a knife. (T.150). According to Mrs. Knighton, once they heard the police announce their presence, Petitioner raised his hands and repeatedly called out, "I'm back here," as if he were one of the victims. (T.149). Mrs. Knighton did not testify that she or her husband had been restrained with duct tape.

The first Buffalo Police Department ("BPD") officer on the scene, Steven Stribing ("Officer Stribing"), said the house was very quiet even after they "holler[ed]" it was the police. (T.178). Eventually, they testified, Mr. Knighton was the first to approach the officers, and was "hollering the whole time that [the defendants] broke into his house and held him at gunpoint and held his family at gunpoint." (T.157, 169, 208-09). Officer Stribing and Officer Gerald Sullivan testified that Mr. Knighton's hands or wrists bound, in front of his body, with duct tape. (Id.). Shortly thereafter, Officer Stribing heard Mrs. Knighton "screaming . . . that they had weapons." (T.190-91). McCoy was the next person to approach the officers. (T.158, 169, 184). He was frisked and taken to the dining room. (T.158). Officer Stribing then heard Mrs. Knighton "hollering that [the defendants] had guns on her and that their baby was in the room;" she was saying, "they are trying to get out the window. They are looking to get out the window and the windows are barred.  We just had bars put on the windows." (T.159). The officer observed that Mrs. Knighton "had duct tape on her wrist with her baby in her arms." (T.163). Officer Stribing testified that he noticed one of the suspects opening the window curtains and looking outside.

Petitioner was the third person in the apartment to approach the officers, which he did "maybe a minute or two" after McCoy. (T.159-60, 204). The police ordered him to the ground and he was brought towards the kitchen area. There was then a struggle between

Mr. Knighton and Petitioner, and Petitioner ran from the house. (T.160, 180). Officers caught him after a brief foot chase, and brought him back to the Knightons' apartment. (T.216-18).

Officer Patrick Baggott then went into the bedroom where Mrs. Knighton and Samia were, and found Harris. (T.185). Harris was arrested and patted down; Officer Baggott found a knife in his back pocket. (T.197). A search of the apartment yielded two handguns, a loaded .44-caliber revolver and an unloaded .38-caliber revolver, which were in a basket on the top shelf of a bedroom closet. In the baby's bedroom, he recovered a mask, a pair of gloves, and a knife that was lying next to the crib. Detective James Maroney recovered a blue bandanna and black ski cap in the bedroom closet. (T.154-160, 184-187, 249).

The seized handguns were analyzed by a forensic serologist. The DNA sample obtained from the .38-caliber (unloaded) handgun was consistent with the DNA samples taken from both McCoy and Mr. Knighton; Harris and Petitioner were excluded as contributors. The .44-caliber (loaded) handgun contained only a trace amount of DNA, which excluded Mr. Knighton and all three co-defendants as possible contributors. (T.349, 352, 358, 365-66). Mr. Knighton's DNA was found on both items of duct-tape, while each defendant was ruled out as a contributor of DNA to the duct tape and the knife. (T.358, 364-66). The prosecution's DNA expert, when asked "if someone were wearing gloves would that be consistent with a lower number," responded, "I can't tell that." (T.353).

McCoy was the only defendant who testified. He stated that Mr. McKnight owed him $3,600 for marijuana which Mr. McKnight had purchased six weeks earlier.[1] According to McCoy, he went to Mr. McKnights's house with Petitioner and Harris in order to collect the money. McCoy acknowledged that he was carrying an unloaded handgun, but denied that he ever used it. He further claimed that Mr. McKnight voluntarily turned over the $1,000 to repay his drug debt, and that no robbery had taken place. (T.380-384).

After a two-day adjournment, Judge Amico convicted Coble of second-degree robbery (P.L. § 160.10(2)(b)) as a lesser included offense. Judge Amico did not explicitly render a verdict on the burglary charge as to Coble, although he did say he found Harris and McCoy guilty of second-degree burglary. At sentencing, Judge Amico sentenced Coble as if he had been convicted of second-degree burglary (P.L. § 140.25(1)(d)) as a lesser included offense, imposing concurrent determinate terms of 7 year in prison on the burglary and robbery convictions, to be followed by 5 years of post-release supervision.

---

[1]

In the course of the police investigation of the crime scene, officers discovered three digital scales underneath a futon in one of the bedrooms. In the closet in this bedroom, the police found a shoebox containing a bag of green vegetal material, a serving bowl with vegetal residue in it, a pair of scissors, some small Ziplock bags, and a 150-count box of sandwich bags with vegetal material in the box. (T.270-72, 274-78, 280-93). Mr. Knighton admitted at trial that he kept marijuana in the home and smoked it regularly, but denied being a dealer and claimed that the drugs and paraphernalia were for his personal use. (T.53-54, 303, 306-12). Although Mr. Knighton was charged with possession of marijuana and drug paraphernalia, those charges were dismissed. (T.54, 71-72).

On direct appeal, Petitioner's robbery conviction was affirmed, but the sentence on the burglary count was vacated, as discussed further below. See People v. Coble, 94 A.D.3d 1520, 1520-21, 943 N.Y.S.2d 352, 353 (4th Dep't), lv. denied, 19 N.Y.3d 995 (2012). Petitioner timely filed this habeas petition in which he asserts, as grounds for habeas relief, the same claims raised by his appellate counsel on direct appeal. Respondent answered the petition and filed a memorandum of law in opposition. Petitioner did not file a reply.

For the reasons set forth below, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. Discussion

### A.    Sentencing Claim

Petitioner repeats his claim, raised on direct appeal, that he was improperly sentenced on a conviction for second-degree burglary (P.L. § 140.25(1)(d)), despite having been acquitted of the charge due to the trial court's failure to address Petitioner's guilt on that charge.  Specifically, at the conclusion of the non-jury trial, the trial court stated that Harris and McCoy were guilty of second-degree burglary as a lesser included offense of first-degree burglary (P.L. § 140.30(1)), as charged in the second count of the indictment. However, the trial court never disposed of the second count of the indictment with respect to Coble. Notwithstanding that omission, the trial court sentenced Coble as if he had been convicted of second-degree burglary. The prosecution conceded on

-7-

direct appeal that the trial court's failure to dispose of the second count "constitute[d] a verdict of not guilty with respect to [that] count[.]" N.Y. CRIM. PROC. LAW § 350.10(5). The Appellate Division agreed that Petitioner had been acquitted of first-degree burglary and all lesser included offenses thereof. The Appellate Division therefore modified the judgment accordingly, by reversing the part of the judgment convicting Coble of second-degree burglary under count two of the indictment, and dismissing that count. People v. Coble, 94 A.D.3d at 1522.

Petitioner's habeas claim based on the trial court's sentencing error is moot, because the Appellate Division gave him all of the relief that he could potentially receive as to this claim. See, e.g., Paul v. Ercole, No. 07 CIV 9462CM HBP, 2010 WL 2899645, at *7 (S.D.N.Y. June 10, 2010), rep. and rec. adopted, No. 07 CIV. 9462, 2010 WL 2884720 (S.D.N.Y. July 21, 2010) ("[P]etitioner prevailed [on appeal] on his claim that the sentence imposed for the count of criminal possession of a weapon in the third-degree was illegal and that the imposition of DNA databank fee violated the prohibition against ex-post facto laws. Since petitioner has received all the relief he sought on these two claims, these claims are moot.").

## B.   Denial of Fair Trial Due to Failure to Disqualify Witness

Petitioner claims that he was denied a fair trial by the allegedly tainted testimony of a prosecution witness. This claim arises from the allegation that one of the complainants,

Mrs. Knighton, received communications from courtroom spectators regarding the contents of her husband's testimony. Following Mr. Knighton's testimony, defense counsel moved for a mistrial based on allegations that various courtroom observers had been relaying the contents of Mr. Knighton's testimony to his wife, who was waiting in the hallway. The trial court conducted an inquiry into whether any improper conversations had taken place, and determined that, based on the testimony it heard, a mistrial was not warranted. (T.120-21). Mrs. Knighton accordingly was permitted to testify. On cross-examination, Mrs. Knighton denied having received information regarding the contents of other witnesses' testimony prior to taking the stand. (T.142).

On direct appeal, the Appellate Division rejected as unpreserved Petitioner's contention that Mr. Knighton's testimony should have been precluded because she violated the order excluding certain witnesses from observing the trial and that the trial court's failure to preclude that testimony deprived him of a fair trial. The Appellate Division attributed lack of preservation to defense counsel's failure to lodge a contemporaneous objection under C.P.L. § 470.05(2)). In any event, the Appellate Division held, the contention was meritless, because it was in the trial court's discretion to grant an order excluding witnesses from observing the trial, and the fact that a witness might have disobeyed such order did not disqualify the witness from testifying. People v. Coble, 94 A.D.3d at 1521 (citing, inter alia,

People v. Cody, 583 N.Y.S.2d 77, 77 (4th Dep't 1992) ("The trial court did not err in permitting the prosecutor's rebuttal witness to testify even though she was present in the courtroom during the testimony presented by the defense. The parties had stipulated to the exclusion of witnesses from the courtroom. The violation of the stipulation in this case did not render the witness incompetent[.]") (citing Richardson, Evidence § 462 (Prince 10th ed.); other citations omitted). The Appellate Division concluded that the trial court "did not abuse its discretion in permitting the complainant in question to testify, especially when she was cross-examined concerning her alleged violation of the order of exclusion and the court was permitted to consider that violation in assessing her credibility[.]" Id. (citation omitted).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). A habeas petitioner must demonstrate that an allegedly erroneous state court evidentiary ruling violated an identifiable constitutional right. See, e.g., Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) ("The [habeas] court must determine whether the exclusion [of testimony] was an error of constitutional dimension. . . ."); Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir.) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue

only where petitioner can show that the error deprived [him] of a fundamentally fair trial.") (emphasis in original), cert. denied, 464 U.S. 1000 (1983). Generally, a habeas court begins by considering "'the propriety of the trial court's evidentiary ruling.'" Hawkins v. Costello, 460 F.3d 238, 242-44 (2d Cir. 2006) (quoting Wade v. Mantello, 333 F.3d 51, 59 (2d Cir. 2003)). Here, the Appellate Division found no error of New York state evidentiary law, a finding with which this Court agrees. Moreover, Petitioner has not demonstrated that this evidentiary ruling implicates a right of constitutional magnitude, as "there is no legal right to the disqualification of a witness based on the witness's presence in the courtroom during the testimony of another witness." Yarborough v. Keane, 101 F.3d 894, 898 (2d Cir. 1996) (collecting cases). Having demonstrated neither an error of state evidentiary law, nor a violation of a federal constitutional right, Coble is not entitled to habeas relief on this claim.

### C.   **Legal Insufficiency of the Evidence**

Petitioner reprises his claim that the evidence is legally insufficient to support the second-degree robbery conviction because he was charged as a principal rather than as an accessory, and the evidence failed to establish that he acted as a principal. The Appellate Division rejected that claim, stating that since liability as a principal or an accomplice is not an element of the crime charged, the prosecution may charge a defendant as a principal but establish his guilt as an accomplice. People v.

Coble, 94 A.D.3d at 1521 (citations omitted). In any event, the Appellate Division held, the evidence was legally sufficient to establish that Coble committed second-degree robbery as a principal. Id. at 1521-22 (citations omitted).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quotation omitted). A court reviewing claims of insufficient evidence must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). In other words, the reviewing court must ask whether the record is "'so totally devoid of evidentiary support that a due process issue is raised.'" Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quoting Mapp v. Warden, 531 F.2d 1167, 1173 (2d Cir. 1976). The habeas petitioner's burden is thus "very heavy." United States v. Chang An-Lo, 851 F.2d 547, 553 (2d Cir. 1988).

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999); alteration in original). Here, Coble was

convicted of second-degree robbery, which required the prosecution to prove that he "forcibly" stole property, and, "in the course of the commission of the crime or of immediate flight therefrom," he or another participant in the crime "displa[ed] what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. PENAL LAW § 160.10(2)(b).

Petitioner's appellate counsel, in his brief, exhaustively detailed a number of inconsistencies in the Knightons' and the police witnesses' testimony and called into question the veracity of Mr. Knighton especially, and the accuracy of all the witnesses' memories. However, "[q]uestions of witness credibility belong to the fact-finder[.]" Moye v. Corcoran, 668 F. Supp. 2d 523, 539 (W.D.N.Y. 2009). Petitioner's trial counsel made these arguments during her summation to the trial judge, who resolved the credibility questions in the prosecution's favor.[2] It is not the province of this Court, sitting in habeas review, to re-examine questions of witness credibility. See, e.g., Garrett v. Perlman, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's specific argument in support of this [legal-insufficiency] claim, that King's testimony was 'incredible,' is likewise not reviewable in

---

[2] Since Petitioner asserted a weight-of-the-evidence claim in addition to his legal-insufficiency claim on direct appeal, the Appellate Division also re-evaluated the complaining witnesses' credibility. The Appellate Division found "no basis" for "disturbing [the trial court's] determination" on credibility issues, including the weight to be given to the complainants' backgrounds, and inconsistencies in the various witnesses' testimony. People v. Coble, 94 A.D.3d at 1521-22. The Appellate Division further found that the "inconsistencies in the witnesses' testimony raised by [Petitioner] on appeal d[id] not render their testimony incredible as a matter of law[.]" Id. at 1522 (citations omitted).

habeas proceedings since credibility determinations are the province of the jury.") (citing <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal.")).

This petition is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which further limits the Court's role in determining sufficiency of the evidence claims. The Supreme Court has made clear that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011) (quotation omitted). Thus, habeas corpus review of a sufficiency of the evidence challenge now requires a "doubly deferential" standard of review, insofar as the court must defer first to the fact-finder's verdict, and second to the state court's determination under the standard set forth in 28 U.S.C. § 2254(d). <u>Garbutt v. Conway</u>, 668 F.3d 79, 81 (2d Cir. 2012) (<u>per curiam</u>). Thus, where the state courts have denied a claim of legally insufficient evidence on the merits, habeas relief should not be granted unless "*no* reasonable court could have held that *any* reasonable [fact-finder] could have read the evidence to establish petitioner's guilt beyond a reasonable." <u>Id.</u> at 82 (emphases in original).

As required by <u>Jackson</u>, this Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the evidence. The Court then has asked whether it was objectively unreasonable for the Appellate Division to determine that there was permissible line of inferences by which a rational fact-finder could conclude that Petitioner, at least as an accomplice, was guilty of second-degree robbery.

Although only McCoy's DNA was found on one of the handguns, P.L. § 160.10(2)(b) does not require the charged defendant to have displayed a firearm himself; it is sufficient that another participant in the crime displayed a firearm. While Mr. Knighton and Mrs. Knighton differed as to whether Coble or McCoy was the first defendant who went into the room she was in, both testified that Coble was in Mrs. Knighton's room at some point, and that McCoy also was in that room with her. Mrs. Knighton testified that Petitioner left his knife, mask and gloves near her daughter's bassinet in the bedroom she was in with her daughter; these items were found near the bassinet by police. It was not objectively unreasonable for the Appellate Division to conclude that a rational fact-finder could have inferred that Coble, by remaining in the room with Mrs. Knighton, intentionally aided McCoy (whose DNA was found on one of the guns) and Harris in their forcible stealing of money from Mr. Knighton. Cognizant of the "doubly deferential" standard applicable to this legal-insufficiency claim, the Court is

unable to say that the Appellate Division objectively and unreasonably determined that the record was not "'so totally devoid of evidentiary support that a due process issue is raised.'" Bossett, 41 F.3d at 830 (quoting Mapp, 531 F.2d at 1173). Therefore, the Court may not grant habeas relief based on Coble's legal-insufficiency claim.

### D.   Verdict Against the Weight of the Evidence

Petitioner claims, as he did on direct appeal, that the verdict was against the weight of the credible evidence under People v. Bleakley, 69 N.Y.2d 490, 495 (1987). This argument presents only issues of New York state law and cannot provide a basis for habeas relief under 28 U.S.C. § 2254(a), which permits federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of the Constitution of the United States, or of a federal law or treaty. Because Petitioner's claim attacking the verdict as against the weight of the evidence does not present a federal constitutional issues cognizable in this habeas proceeding, it must be dismissed. E.g., Moye, 668 F. Supp.2d at 539–40 (collecting cases).

### E.   Erroneous Consideration of Lesser Included Offense

Petitioner claims that the trial court improperly considered second-degree robbery as a lesser offense, despite defense counsel's statement that he did not want lesser offenses considered as to his client. However, defense counsel did not object to the trial court's consideration of the lesser offense during the charge

conference itself (see T.437-439). On direct appeal, the Appellate Division held that the claim was unpreserved. See People v. Coble, 94 A.D.3d at 1522 ("Defendant's contention that the court erred in considering robbery in the second degree as a lesser included offense of robbery in the first degree (Penal Law § 160.15[2]) and in convicting him of the lesser included offense is waived inasmuch as defendant failed to make a timely objection with respect thereto[.]") (citing People v. Ford, 62 N.Y.2d 275, 282–83 (1984) ("An error by the trial court in submitting or considering a lesser crime arising out of the same transaction [as the indicted crime] that is not a lesser included offense does not affect that court's competence to entertain the action or to convict of that crime, but only its authority to enter a judgment on the merits against defendant on that specific charge in particular facts of that case. Such an error is not jurisdictional and, pursuant to CPL 300.50, may be waived if timely objection is not made."); other citation omitted).

Respondent argues that habeas review is foreclosed because the Appellate Division's judgment rests upon an independent and adequate state procedural ground. See, e.g., Coleman v. Thompson, 501 U.S. 722, 729 (1991) (stating that a federal habeas court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"; this "rule applies whether the state law ground is

substantive or procedural"). After reviewing the caselaw, the Court finds that the Appellate Division's reliance on the contemporaneous objection rule and People v. Ford, supra, constitutes an adequate and independent state ground for rejecting Coble's claim regarding lesser included offenses as unpreserved. The state ground is "adequate," because it is a firmly established and regularly followed rule by the New York state courts in circumstances analogous to those in Coble's case; it is clearly "independent" because the Appellate Division did not consider the merits of the claim after finding it to be unpreserved. See, e.g., Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007) ("[B]ecause § 470.05(2) is a state law ground on which the New York appellate court's decision is based, and that ground is both independent of any federal question and adequate under firmly established and regularly followed state law, we will not disturb the state appellate court's ruling that the defendant's protest at trial was insufficient to preserve the arguments he wishes to raise on appeal."). Coble has not attempted to demonstrate cause for the default and prejudice attributable thereto, or that a fundamental miscarriage of justice would occur if this Court declines to consider the claim. Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977). The Court finds no basis to excuse the procedural default, and therefore dismisses the lesser offense claim on that basis.

## IV.   Conclusion

For the reasons discussed above, Duane Coble's request for a writ of habeas corpus is denied, and the petition is dismissed. The Court declines to issue a certificate of appealability because Petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to close this case.

**SO ORDERED**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 28, 2017
           Rochester, New York